```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

NELLE RICHARDSON,

                Plaintiff,              MEMORANDUM & ORDER
                                           19-CV-3603(EK)
        -against-

ANDREW SAUL, Commissioner of
Social Security,

                Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

In this appeal, Nelle Richardson challenges the Commissioner of Social Security's decision denying her application for disability benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  Richardson seeks reversal of the Commissioner's decision, or, alternatively, remand for further administrative proceedings.  The Commissioner asks the Court to affirm the denial of benefits.  For the reasons set forth below, I grant the Commissioner's motion and deny Richardson's cross-motion.

### I.  Background

Richardson applied for Social Security benefits on April 13, 2016, alleging disability beginning July 30, 2015 due to injuries of her upper and lower back and neck; pain in her right knees, right shoulder, and right elbow; and memory loss.

Certified Administrative Record dated Sept. 11, 2019 ("Tr.") at 196, 284-85, 316, ECF No. 16.  The Social Security Administration initially denied her claim.  Tr. at 213.  Richardson then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 14, 2018.  Tr. at 76-72.  Following the hearing, the ALJ issued a comprehensive written decision denying Richardson's application.  Tr. at 63.  The ALJ found Richardson not to be disabled within the meaning of the Social Security Act because she was able to perform sedentary work.  Tr. at 62-63.  The Appeals Council denied Richardson's request for review of the ALJ's decision, converting it into the final decision of the Commissioner.  Tr. at 1-7.  Richardson appealed to this Court on June 19, 2019.

## II.  Standard of Review

A federal district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions:  whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v.*

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g). However, "[f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

### III. Statutory and Regulatory Framework

An applicant is entitled to disability benefits if that person is "disabled." 42 U.S.C. § 423(a)(1)(E). Social Security regulations set out a five-step procedure for evaluating whether or not a claimant meets the statutory definition. First, the claimant may not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must have a "severe impairment" — that is, an impairment or combination of impairments that significantly limits the applicant's ability to perform basic work activities. *Id.* § 404.1520(c). If one or more impairment is "severe," the ALJ will assess, at the third step, whether the claimant's impairments meet or equal one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the analysis stops and the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or equal one of the Listed Impairments, the ALJ must determine the claimant's

3

residual functional capacity ("RFC") before moving on to the fourth step.  The ALJ will then evaluate, at the fourth step, whether the claimant can perform any "past relevant work" in light of her RFC — in other words, whether the claimant can go back to doing a type of work that he or she has done previously.  *Id.* § 404.1520(f).  Inability to perform past relevant work is a necessary but not sufficient condition for a disability determination.  Finally, at step five, the ALJ will deem the claimant disabled if, given the claimant's age, education, work experience, and RFC, the claimant cannot transition to other work.  *Id.* § 404.1520(g).

## IV.  ALJ Decision

The ALJ determined at step one that Richardson had not engaged in substantial gainful activity since her alleged onset date.  Tr. at 49.  At step two, the ALJ evaluates whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe."  Tr. at 48.  Here, the ALJ found that Richardson did have one severe impairment — degenerative cervical disorder.  Tr. at 49-50.  The ALJ concluded that Richardson's other impairments — "shoulder bursitis, sprain of the left knee and lumbar spine (resolved) and obesity"[1] — did not qualify as severe.  *Id.*  The record did

---

[1] The ALJ acknowledged that Richardson did not claim disability due to obesity.  Tr. 50.

4

not establish that Plaintiff's memory loss was a medically determinable impairment. Tr. at 50. At step three, the ALJ determined that none of these impairments — severe or non-severe, separately or in combination — met or equaled one of the Listed Impairments. *Id.*

The ALJ then found Richardson to have the residual functional capacity to perform sedentary work, as defined in 20 C.F.R § 404.1567(a). *Id.* Richardson could "engage in occasional overhead reaching with both arms; occasional climbing ramps or stairs; occasional crawling or kneeling; and occasional crouching or stooping"; but not "climbing ladders, ropes or scaffolds, and never balancing." *Id.* Richardson would be "restricted from dangerous moving machinery or unprotected heights," and "would need a sit/stand option allowing a change of position briefly for 1 to 2 minutes every hour without leaving the workstation." *Id.*

At the fourth and fifth steps, the ALJ determined that Richardson could perform her past relevant work as a caseworker and pre-parole counseling aide, but that even if this assessment were erroneous, Richardson's age (forty-nine), education, work experience, and RFC would allow her to transition to a range of other sedentary work that is generally performed in the national economy. Tr. at 61-62.

5

## V. Discussion

**A. Severe Impairments**

Plaintiff argues that the ALJ erred in finding, at step two, that only her degenerative cervical disorder qualified as a "severe impairment." Plaintiff contends that the ALJ should have also found the injuries to her right upper extremity (the right shoulder, wrist, and elbow), knees, and lumbar spine to be severe. Pl. Br. at 11-12.

Assuming, arguendo, that the step two finding was erroneous, Richardson is still not entitled to relief. Any potential omission of a severe impairment at step two may "be deemed harmless where the ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination." *E.g.*, *Matta v. Colvin*, 2016 WL 524652, at *12 (S.D.N.Y. Feb. 8, 2016); *see also O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014) (summary order) ("Because this condition was considered during the subsequent steps, any error was harmless."); *Ostuni v. Saul*, No. 19-CV-00021, 2019 WL 6271353, at *6 (D. Conn. Nov. 25, 2019) (any potential error was harmless because ALJ discussed the contested symptoms in the RFC analysis).

Here, the ALJ did consider the effects of Plaintiff's upper extremity, knee, and lumbar spine issues in making the ultimate RFC determination. This consideration extended to

6

specific evidence that Plaintiff claims the ALJ ignored, including that Plaintiff underwent right shoulder surgery in September 2017, Tr. at 52-5; had "hypoesthesia of the lower extremities," Tr. at 54; and suffered a 15 percent loss of use of her left leg, among other things. Tr. at 59. The ALJ also stated that in determining Plaintiff's RFC, she considered "all of the evidence contained in the record" and "all symptoms . . . as a whole." Tr. at 50, 59-60. These statements are sufficient to show that the ALJ considered both severe and nonsevere impairments in the RFC finding. *See Colvin*, 558 F. App'x at 65 ("[T]he ALJ's decision makes clear that he considered 'all symptoms' and the 'combination of impairments' in making his determination."). Thus even if the ALJ erred in evaluating severity, any error was harmless under *Matta, supra*.

**B. Residual Functional Capacity**

As described above, the ALJ found that Richardson had the residual capacity to perform sedentary work, which "involves lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a). She determined that Richardson could "engage in occasional overhead reaching with both arms; occasional climbing ramps or stairs[,] occasional crawling or kneeling[,] and occasional crouching or stooping, but no climbing ladders, ropes or scaffolds and never balancing," provided that Plaintiff "would need a sit/stand option allowing a change of position

7

briefly for [one] to [two] minutes every hour without leaving the workstation."

Plaintiff argues that the ALJ erred in not finding a more restrictive RFC. She contends that she is not capable of even sedentary work, based on the medical record. She argues that she is not able to lift more than five pounds, has a "significantly diminished" ability to perform fine and gross manipulation, and cannot use her neck "in any meaningful way." Pl Br. at 16-17. She invokes evidence including Dr. Nellans' assessment that she has de Quervain's tenosynovitis affecting the right wrist, Tr. 412, and an EMG showing bilateral chronic C5-C6 radiculopathy. Tr. 535. She also alleges, without citations to the administrative transcript, that the "records are replete with references to . . . chronic pain the neck." Pl. Br. at 17. The record supports the ALJ's conclusion. There is "more than a scintilla of evidence" supporting the RFC finding, including medical evidence by three treating physicians: Dr. Nellans found Plaintiff's grip strength to be excellent, and stated that Plaintiff's elbow and hand "seem to be doing quite well"; Dr. Essig, also a treating physician, observed that Plaintiff had full range of motion of both shoulders, without evidence of impingement, as well as "5/5 strength" in her wrist extensors, wrist flexors, finger flexors, and hand intrinsics; and Dr. Goodwillie noted improvement in

8

Plaintiff's neck dysfunction with physical therapy, and observed that her reported pain was out of proportion with the examination findings. As to Plaintiff's shoulder, she did require shoulder surgery in September 2017, but records from October and November 2017 noted improvement. Tr. at 60. The RFC also credited the opinion of a treating physician, Dr. Nipper, that Plaintiff could not lift more than ten pounds with her right arm. Tr. at 53.

It is, in any event, "up to the agency, and not this court, to weigh the conflicting evidence in the record." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Therefore, the ALJ did not err in the determination of Plaintiff's RFC.

9

**C. Assignment of Weight to Medical Opinions**

    1.   <u>Treating Physician Rule</u>

    Under the rule in effect at the time of the hearing, the ALJ was required to afford certain deference to the opinions of the claimant's treating physicians.[2] Here, Richardson argues that the ALJ erred in affording "great weight" to non-treating physicians — specifically, consultative internal medicine examiner Dr. Teli and the workers' compensation physicians — while according diminished weight to the opinions of the treating physicians.

    The ALJ was required to give the treating physicians' opinions "controlling weight" to the extent they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 416.927(c)(2)). A treating physician's statement that the claimant is "disabled" or "unable to work," however, concerns an ultimate issue reserved the Commissioner, and should be given no weight. 20 C.F.R. § 404.1527(d)(1). "That means that the Social Security Administration considers the data that physicians provide but

---

[2] The applicable regulation has now been amended to eliminate the treating physician rule for applications filed after March 27, 2017. *E.g.*, *Valderrama v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 141, 146 (E.D.N.Y. 2019) (citing 20 C.F.R. § 404.1520(c)). Because Plaintiff filed his application on April 13, 2016, the ALJ was required to apply the treating physician rule.

10

draws its own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ set forth in detail the findings of each treating physician. She assigned "little weight" only to two of the treating physicians' conclusions — Dr. Weisman's opinion that the claimant was disabled and Dr. Essig's opinion that the Plaintiff was unable to work — because they were "conclusory" and spoke to issues reserved to the Commissioner under 20 C.F.R. § 404.1527(d)(1). Plaintiff argues, in particular, that these findings are inconsistent with the ALJ's assignment of "great weight" to Dr. Nellans, who also opined that Plaintiff could not return to work. That argument, however, misapprehends the record. Plaintiff visited Dr. Nellans in January 2016 for right elbow pain and was given a steroid injection. Dr. Nellans instructed that she not return to work until after her follow-up appointment in February, not that she not return at all. Tr. at 53 (citing Exhibit 2F). At subsequent February and March appointments, Dr. Nellans noted that Plaintiff's elbow and hand seemed to be doing quite well. *Id*.

The ALJ properly afforded less than controlling weight to these treating physicians' opinions. *E.g.*, *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *17 (E.D.N.Y. Aug. 14, 2012) (ALJ correctly accorded limited weight to treating physician's conclusory opinion, where ALJ reviewed the medical

11

evidence and found that the record as a whole did not support a finding of disability); *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) (ALJ acted within his discretion by examining the treating physician's notes and other medical opinion evidence and then explaining which portions of the treating physician's opinion would be given less weight and why).

    2.    <u>Consultative Examiner Teli</u>

Plaintiff claims that the ALJ erred in giving "great weight" to the consultative examiner, Dr. Teli, because other courts in this district have found his reports to be too vague or not based on the plaintiff's medical records. "It is generally accepted," however, "that a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (collecting cases). An ALJ may also assign great weight to a consultative examiner's opinion even if the examiner lacked prior medical records or MRI findings, as long as the doctor personally examined Plaintiff and reached conclusions consistent with the objective medical evidence. *Wright v. Berryhill*, 687 F. App'x 45, 47 (2d Cir. 2017) (summary order); *see also Marquez v. Colvin*, No. 12-CV-6819, 2013 WL 5568718, at *13 (S.D.N.Y. Oct. 9, 2013).

12

Dr. Teli found, following an in-person evaluation, that Plaintiff had "moderate restrictions for squatting, and mild restriction for prolonged standing, walking, and climbing and mild restriction for activities of the right hand." Tr. at 560. The ALJ deemed this opinion to be consistent with the record as a whole, and this finding was grounded in substantial evidence. Tr. at 57. Dr. Teli's opinion was therefore given appropriate weight.

3. Workers' Compensation Physicians

Richardson also argues that the ALJ erred in giving great weight to the opinions of physicians who evaluated Richardson in connection with her workers' compensation claims. "However, an opinion about a claimant's functional assessment, as opposed to a general disability conclusion, should not be rejected simply because of the context in which the opinion is rendered." *Pataro v. Berryhill*, No. 17-CV-6165, 2019 WL 1244664, at *17 (S.D.N.Y. Mar. 1, 2019), *R. & R. adopted*, 2019 WL 1244325 (S.D.N.Y. Mar. 18, 2019). An ALJ may consider a physician's opinion rendered for a worker's compensation claim to the extent the doctor assessed a claimant's symptoms, though the ALJ cannot rely on the physician's ultimate conclusion regarding disability. *E.g., Urbanak v. Berryhill*, No. 17-CV-5515, 2018 WL 3750513, at *25 (S.D.N.Y. July 18, 2018), *R. & R. adopted*, 2018 WL 3745667 (S.D.N.Y. Aug. 7, 2018). The ALJ thus

13

did not err in according great weight to the workers' compensation physicians' opinions.

**D. Past Relevant Work**

Prior to her alleged disability, Richardson worked as a "pre-parole counseling aide" from 1988 to 2015, and a "caseworker" for "a few months" in 2015. Tr. at 61. A vocational expert testified at the hearing before the ALJ that the Dictionary of Occupational Titles ("DOT") classifies those positions at the "sedentary exertion" level. *Id.* Plaintiff argues that her actual jobs were more akin to a parole officer, given that Plaintiff had to travel to visit clients at Rikers Island. She says her prior work therefore entailed "light" exertion, rather than being sedentary. However, "[t]he inquiry in Social Security benefits cases is not whether a claimant is able to perform the precise duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* SSR 82-61 ("[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'"). Plaintiff has not met her burden of

14

showing she could not perform the job as generally performed (at the sedentary exertional level).

In any event, the ALJ not only relied on the vocational expert's testimony at step four, but also found at step five that Plaintiff had transferable skills applicable to a number of other jobs in the national economy. Thus, even if the ALJ did err in relying on the vocational expert's testimony, she would have still found (on the basis of substantial evidence) that Richardson's age, education, work experience, and residual functional capacity allowed her to transition to a range of other sedentary work.

### E. Time Off-Task

Plaintiff also contends that the ALJ failed to consider the degree to which Plaintiff's impairments and other symptoms would cause her to be "off-task" during working hours. Being off-task includes "needing unscheduled breaks[] and missing unscheduled work days." *Rugless v. Comm'r of Social Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013). When the record contains indications that a claimant's residual functional capacity would require being off-task for a substantial part of the workday, the Commissioner's decision should consider whether this would preclude the claimant from performing past relevant work or transitioning to other work. *See id*. There is no indication in the record, however, that Plaintiff would

necessarily be off-task. No physician opined that Plaintiff would require unscheduled breaks, miss unscheduled days, or be off-task for any percentage of time. At the hearing, the vocational expert testified that if a claimant were to be off-task for fifteen percent of the workday, "employers [would not] tolerate that amount of time off-task so that would preclude the jobs I've proposed and other occupations or jobs." Tr. at 97-98. This statement was hypothetical, however; the vocational expert was not remarking that this Plaintiff would be off task for fifteen percent of her workday. *Cf. Bushey v. Berryhill*, 739 F. App'x 668, 674 (2d Cir. 2018) ("The only indication in the record we could find to support [the claimant's] conclusion that she is 'off-task over 15 percent of the time' is her attorney's conclusory assertion in a December 17, 2014 letter."). Plaintiff's claim related to time off-task therefore fails.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, and Richardson's

motion for judgment on the pleadings is denied.  The Clerk of Court is requested to enter judgment and to close this case.

SO ORDERED.

                                             /s Eric Komitee_____
                                            ERIC KOMITEE
                                            United States District Judge

Dated:   August 24, 2021
         Brooklyn, New York